IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| RUBEN MESTA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| v. | ) | Case No. 10 CV 4341 |
| | ) | |
| RS OF CHICAGO, LLC d/b/a P.S. | ) | Magistrate Judge: Sidney I. Schenkier |
| CHICAGO THE CASUAL NIGHTCLUB, | ) | |
| and PERA ODISHOO, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION AND ORDER

Ruben Mesta has filed a three-count amended complaint (doc. # 6) against R.S of Chicago, LLC d/b/a P.S. Chicago ("P.S. Chicago") and Pera Odishoo (collectively the "defendants"). Mr. Mesta asserts claims against these defendants under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e ("Title VII"), for: (1) sexual harassment (Count I), (2) retaliation (Count II), and (3) sex discrimination (Count III). Count I alleges that, while employed as a "busser/barback" at P.S. Chicago, Mr. Mesta was "subjected to debilitating and unlawful sexual harassment" from his male supervisor, Nate Crawford (Compl. ¶¶ 12, 15-16, 18). In Count II, Mr. Mesta alleges that he rejected Mr. Crawford's advances, that he was retaliatorily discharged a few weeks later, and that his termination amounts to retaliation. (*Id.*, ¶¶ 51-54). (Compl. ¶¶ 51-54). Finally, in Count III, Mr. Mesta alleges that similarly situated female employees were not "constantly subjected to sexual harassment" or terminated, and that P.S. Chicago "subjected [Mr. Mesta] to illegal, inferior and miserable terms and conditions of employment due to his sex" (Compl. ¶¶ 75, 77-78).

Plaintiff does not allege that Mr. Odishoo himself committed acts of harassment or retaliation. Rather, Mr. Mesta alleges that Mr. Odishoo was the "principal officer and owner" of P.S. Chicago, that he "owned, operated, managed, and controlled P.S. Chicago as a mere

instrumentality," that he used P.S. Chicago as his alter ego, that he "failed to adhere to corporate formalities," that he "failed to maintain the corporate books and records of P.S. Chicago," that "P.S. Chicago was grossly undercapitalized," and that he caused the dissolution of P.S. Chicago and "dissipated its assets after he became aware of [Mr. Mesta's] charges" (Compl. ¶¶ 40-47, 63-70, 79-86). By these allegations, plaintiff seeks to hold Mr. Odishoo personally responsible for the Title VII liability that Mr. Mesta alleges P.S. Chicago has incurred.

Presently before the Court is defendants' motion for judgment on the pleadings (doc. # 36), filed pursuant to Federal Rule of Civil Procedure 12(c). By this motion, defendants seek to dismiss all counts as they relate to Mr. Odishoo and to dismiss Count III in its entirety. For the following reasons, we grant the defendants' motion.[1]

## I.

The applicable standards for a Rule 12(c) motion for judgment on the pleadings are those that govern a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6). *Applied Indus. Materials Corp. v. Mallinckrodt, Inc.*, 102 F. Supp. 2d 934, 936 (N.D. Ill. 2000). Rule 12(b)(6) requires dismissal if the allegations in the complaint, taken as true and with all reasonable inferences drawn in favor of the party making the claim, do not state a claim for which legal relief can be granted. In deciding this motion under Rule 12(c), we therefore construe the allegations "in the light most favorable to the plaintiff, accept well-pleaded facts as true, and draw all inferences in the plaintiff's favor." *Estate of Davis v. Wells Fargo Bank*, 633 F.3d 529, 533 (7th Cir. 2011).

To determine if the allegations are sufficient to state a claim, a court must determine if they make the asserted claim "plausible on its face." *Ashcroft v. Iqbal*, —— U.S. ——, 129 S. Ct. 1937,

---

[1]Pursuant to the consent of all parties and 28 U.S.C. § 636(c), the case has been assigned to this Court for all proceedings, including the entry of final judgment (doc. # 22).

1949 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 556, 127 S. Ct. at 1965-66). Although the material facts alleged must be taken as true and construed favorably toward the plaintiff, this rule does not apply to legal conclusions or to conclusory statements. *Id.*

## II.

At the threshold, defendants move to dismiss all counts against Mr. Odishoo because he was not named in the original EEOC charge (Defs.' Mem. at 4-7). Title VII states that "a civil action may be brought against the respondent named in the [EEOC] charge." 42 U.S.C. § 2000e-5(f)(1). As a result, a party not named as a respondent in an EEOC charge generally may not be sued in a subsequent Title VII action. *See, e.g., Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 126 (7th Cir. 1989) (HSSI, who was not named in the EEOC charge but had actual knowledge of the EEOC charge against its subsidiary corporation Baskin, and participated in conciliation proceedings on Baskin's behalf, nonetheless thus was properly dismissed from the Title VII case, because it "did not thereby have any notice of any charges against it, nor did it have any opportunity to conciliate on its own behalf"); *Allen v. City of Chicago*, 828 F. Supp. 543, 556 (N.D. Ill. 1993) (Title VII claims against Mayor Richard M. Daley and Commissioner of the Department of Personnel Glenn E. Carr was dismissed; even though the individuals likely had "actual or constructive notice" of the charges against the City, they were not named in the EEOC charge along with the City and thus had no notice of any charges against them and no opportunity to participate in conciliation proceedings on their behalf).

There is an exception to this rule "where an unnamed party has been provided with adequate notice of the charge, under circumstances where the party has been given the opportunity to participate in conciliation proceedings aimed at voluntary compliance." *Eggleston v. Chicago Journeyman Plumbers' Local Union No. 130, U.A.*, 657 F.2d 890, 905 (7th Cir. 1981). Mr. Mesta does not argue that this exception applies here. Indeed, Mr. Mesta acknowledges that Mr. Odishoo is not being sued under Title VII (Pl.'s Resp. at 3).

Mr. Mesta argues that Mr. Odishoo nonetheless is a proper defendant for two reasons. As we explain below, we reject each of those arguments.

**A.**

Mr. Mesta argues that Mr. Odishoo is a proper defendant based on the allegation that he is the alter ego of P.S. Chicago (Pl.'s Resp. at 3-4). However, this argument flies in the face of the well-settled rule that supervisors and owners of a defendant corporation cannot be held individually liable under Title VII for acts of discrimination in the workplace. *Williams v. Banning*, 72 F.3d 552, 555 (7th Cir. 1995); *Bell v. Koerten*, 1999 WL 971282, at **1-2 (N.D. Ill. Oct. 21, 1999).

Mr. Mesta contends that there is an exception to this rule where the defendant is the alter ego of the defendant corporation. But, this argument has been foreclosed by *Worth v. Tyer*, 276 F.3d 249 (7th Cir. 2001). In that case, the Seventh Circuit held that the district court had erred in denying defendant's motion for judgment as a matter of law on a Title VII claim against a supervisor. In so holding, the appeals court explained that even if, as the plaintiff alleged, the supervisor was the "alter ego" of the defendant corporation, he was not liable in his individual capacity absent a showing of fraud or injustice. *Worth*, 276 F.3d at 261-62. Rejecting the "alter ego" theory of individual liability "is further supported by Congress' aversion to individual liability under Title

4

VII." *Id.* at 262. In light of the Seventh Circuit's clear holding in *Worth*, Mr. Mesta's attempt to impose liability on Mr. Odishoo under an alter ego theory is a non-starter.[2]

**B.**

Mr. Mesta also argues that Mr. Odishoo is a proper defendant in this case because P.S. Chicago likely will not be able to pay a judgment if Mr. Mesta obtains one (Pl.'s Resp. at 4). However, the potential inability of a corporation to pay damages to a Title VII plaintiff does not render an owner or officer a proper defendant. *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1282 n.9 (7th Cir. 1995) ("[Plaintiffs] argue that sometimes the employer may be bankrupt or otherwise judgment-proof, so individual liability will be the only possible way a plaintiff can recover. While true, that is not enough for us to upset the structure Congress has set up.").

Mr. Mesta argues that P.S. Chicago's dissolution renders Mr. Odishoo a proper defendant under Illinois law, citing to 805 ILCS 5/12.80. However, that statute does not carry the weight Mr. Mesta asks it to bear. Section 5/12.80 states, in relevant part, that "[t]he dissolution of a corporation . . . shall not take away nor impair any civil remedy available to or against such corporation, its directors, or shareholders, for any right or claim existing . . . prior to such dissolution . . . ." The statute does not, contrary to plaintiff's argument, say that the dissolution of a corporation automatically renders the owner liable for the corporate debts.

Moreover, the case Mr. Mesta relies on in his argument, *Peetoom v. Swanson*, 334 Ill. App. 3d 525 (2002), involved a supplementary collection action *after* the plaintiff has sued the

---

[2] Even if this Court were to accept an alter ego theory of individual Title VII liability as generally viable, it would nonetheless fail in this case because Mr. Mesta has pled insufficient facts to state a claim that Mr. Odishoo is the alter ego of P.S. Chicago. *See Iqbal*, 129 S.Ct. at 1949 (favorable construction of pleadings for plaintiffs does not apply to "legal conclusions, supported only by conclusory statements"); *Source One Global Partners, LLC. v. KGK Synergize, Inc.*, 2009 WL 2192791, at *4 (N.D. Ill. July 21, 2009) ("conclusory" allegations of elements of alter ego claim are "entitled to no weight in our analysis").

corporation and obtained a judgment but had been unable to collect on it. Certainly, if Mr. Mesta first obtains a judgment against P.S. Chicago, he then may seek to collect that judgment from Mr. Odishoo in various ways. *See Peetoom*, 334 Ill. App. 3d at 528 (discussing remedies through which "a judgment creditor who has managed to secure a judgment against a corporation [may] . . . seek [] to hold the individual shareholders and directors of the judgment debtor corporation liable for that judgment . . . ."). But, plaintiff here seeks to put the cart before the horse by suing Mr. Odishoo before he has obtained a judgment against P.S. Chicago. *Peetoom* does not support plaintiff's attempt to make an end run around the clear rule that owners are not proper defendants in a Title VII case.

For the foregoing reasons, the defendants' motion to dismiss all counts against Mr. Odishoo is granted.

### III.

Defendants move to dismiss Mr. Mesta's sex discrimination claim alleged in Count III, because Mr. Mesta did not include a claim of sex discrimination in the original EEOC charge. A Title VII plaintiff generally cannot bring claims in a lawsuit that were not included in his EEOC charge. *Cheek v. W. & S. Life Ins. Co.*, 31 F.3d 497, 500 (7th Cir. 1994); *Rush v. McDonald's Corp.*, 966 F.2d 1104, 1110 (7th Cir. 1992). "This limitation . . . gives the employer some warning of the conduct about which the employee is aggrieved, and it affords the agency and the employer an opportunity to attempt conciliation without resort to the courts." *Rush*, 966 F.2d at 1110 (citing *Babrocky v. Jewel Food Co.*, 773 F.2d 857, 863 (7th Cir. 1985)).

Here, there can be no dispute that Mr. Mesta's EEOC charge did not assert a claim of discrimination based on sex. On the face of the charge, Mr. Mesta stated that he was alleging discrimination based on "sexual harassment" and "retaliation" (Compl. Ex. B). Likewise, in the

6

section of the charge in which he described the particulars of his claim, Mr. Mesta did not state that he was alleging sex discrimination.

We recognize that "because most EEOC charges are completed by laypersons rather than by lawyers, a Title VII plaintiff need not allege in an EEOC charge each and every fact that combines to form the basis of each claim in her complaint." *Id.*; *see also Harper v. Godfrey Co.*, 45 F.3d 143, 148 (7th Cir. 1995) (noting the "liberality afforded Title VII plaintiffs"). A claim not explicitly mentioned in the EEOC charge is cognizable when the claim is "'like or reasonably related to the allegations of the charge and growing out of such allegations.'" *Cheek*, 31 F.3d at 500 (quoting *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.*, 538 F.2d 164, 167 (7th Cir. 1976) (en banc)). The *Jenkins* test has two parts, both of which must be satisfied. *Id.*

In assessing the first prong of the *Jenkins* test, courts consider whether the Title VII claim and the EEOC charge are "reasonably related," *i.e.*, whether there is "a factual relationship between them," which "means that the EEOC charge and the complaint must, at minimum, describe the same conduct and implicate the same individuals." *Cheek*, 31 F.3d at 501. In other words, claims can be considered reasonably related when they are "so related and intertwined in time, people, and substance that to ignore that relationship for a strict and technical application of the rule would subvert the liberal remedial purposes of the Act." *Kristufek v. Hussmann Foodservice Co.*, 985 F.2d 364, 368 (7th Cir. 1993). The second prong tests whether a claim can reasonably be expected to grow out of an EEOC charge and "requires speculation as to what the EEOC might or might not discover in the course of an investigation." *Id.* at 500. "Allegations outside the body of the charge may be considered when it is clear that the charging party intended the agency to investigate the allegations." *Cheek*, 31 F.3d at 502. This second part is "difficult to apply" because it involves speculation into what the EEOC might investigate. *Id.*

7

Mr. Mesta argues that his sex discrimination allegation in the complaint is "like or related" to the claims he presented in his administrative charge (Pl.'s Resp. 7-11). In making this argument, Mr. Mesta faces an uphill battle: the Seventh Circuit has made clear that under the *Jenkins* test, as a general rule, Title VII claims of sexual harassment, retaliation, and/or sex discrimination will not be sufficiently related to each other such that the inclusion of one in an EEOC charge permits the inclusion of others in a Title VII action. *Sitar v. Ind. Dep't of Trans.*, 344 F.3d 720, 726 (7th Cir. 2003); *Cheek*, 31 F.3d at 503. In our view, this case is not an exception to this general rule.

At the threshold, Mr. Mesta fails to satisfy the first prong of *Jenkins*, because his sex discrimination claim does not allege the same conduct described in the EEOC charge. In his EEOC charge, Mr. Mesta detailed certain alleged instances of sexual harassment by Mr. Crawford, and stated that Mr. Mesta made clear to Mr. Crawford that this conduct was unwelcomed. In his retaliation charge, Mr. Mesta claimed that despite meeting legitimate work expectations, he was fired because he "opposed unlawful discrimination by continually rejecting the sexual advances" of Mr. Crawford (Compl. Ex. B).

The sexual harassment and retaliation claims plead in Counts I and II of the complaint allege substantially the same facts, with some elaboration. The sex discrimination claim that Mr. Mesta alleges in Count III of the complaint incorporates Counts I-II by reference, but adds two allegations found nowhere in the EEOC charge. *First*, Mr. Mesta now alleges that similarly situated female employees "were not constantly subjected to sexual advances" and "were not terminated" (Compl. ¶¶ 73-77). *Second*, Mr. Mesta now alleges that "P.S. Chicago further subjected Plaintiff to illegal, inferior and miserable terms and conditions of employment due to his sex" (Compl. ¶ 78).

These additional allegations make clear that Mr. Mesta's sex discrimination claim does not allege the same conduct as his sex harassment and retaliation claims. Moreover, these additional

allegations are not merely surplusage; they are central to his sex discrimination claim. To prove a sex discrimination claim, a plaintiff must show that similarly situated employees outside the complaining employee's protected class were not subjected to the same adverse employment action. *LaFary v. Rogers Grp., Inc.*, 591 F.3d 903, 907 (7th Cir. 2009). This is necessary in order to support a conclusion that discrimination occurred "because of ... sex," and thus in violation of Title VII.

Mr. Mesta made no allegation in his EEOC charge that he was discriminated against, harassed, or retaliated against specifically because of his sex. Nor did he include any explicit or implicit suggestion that similarly situated female employees may have been treated differently. Mr. Mesta failed to make even the nominal efforts to give notice of his intention to pursue a sex discrimination claim. Because of his failure to allege – even indirectly – that he was treated differently from members outside of his protected class, Count III is outside the scope of his EEOC charge.

## IV.

Mr. Mesta raises one additional argument in an attempt to show that his sex discrimination survives. Mr. Mesta alleges that the sex discrimination claim necessarily grows out of the EEOC investigation into his same-sex harassment charge, because the evidence that would prove a same-sex harassment charge overlaps with the evidence needed to prove a *prima facie* case of sex discrimination (Pl.'s Resp. at 9-11). In particular, Mr. Mesta argues that the two claims share an element—that similarly situated female employees were not subjected to the same adverse employment action. *LaFary*, 591 F.3d at 907. By this argument, Mr. Mesta seeks to create, for same-sex harassment cases, an exception to the general rule that claims of sex harassment are not like or related to claims of sex discrimination. For the reasons that follow, we reject this argument.

9

When a charge of discrimination is filed, the EEOC is required to investigate that charge, *E.E.O.C. v. Caterpillar, Inc.*, 409 F.3d 831, 832 (7th Cir. 2005), and not to investigate other potentially discriminatory conduct not included in the charge. We thus begin with consideration of how the EEOC defines sexual harassment, which is as:

> Unwelcome sexual advances, requests for sexual favors, and other verbal or physical conduct of a sexual nature . . . when (1) submission to such conduct is made either explicitly or implicitly a term or condition of an individual's employment, (2) submission to or rejection of such conduct by an individual is used as the basis for employment decisions affecting such individual, and (3) such conduct has the purpose or effect of unreasonably interfering with an individual's work performance or creating an intimidating, hostile, or offensive working environment.

29 C.F.R. § 1604.11(a); *see also Hill v. Village of Franklin Park*, 2008 WL 4181733, at *4 (N.D. Ill. Sept. 5, 2008).

Certainly, when investigating an alleged instance of sexual harassment, the EEOC "will look at the record as a whole and at the totality of the circumstances, such as the nature of the sexual advances and the context in which the alleged incidents occurred." 29 C.F.R. § 1604.11(b). But, nothing in the EEOC's regulations suggest that an investigation into sexual harassment allegations requires – or inexorably must lead – the EEOC to investigate how similarly situated employees outside the complaining employee's protected class were treated or into whether the advances, requests for favors, or conduct target a particular gender.

We recognize that the treatment of women in the workplace may be relevant to prove sexual harassment of a male employee, because harassment is actionable under Title VII not "merely because the words used have sexual content or connotations," but because "members of one sex are exposed to disadvantageous terms or conditions of employment to which members of the other sex are not exposed." *Oncale v. Landowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998); *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 25 (1993) (Ginsburg J., concurring). For that reason, a Title VII

10

plaintiff alleging same-sex harassment can create the same "chain of inference" as an opposite-sex harassment plaintiff where he either: (1) presents "credible evidence that the harasser was homosexual," (2) demonstrates that "[he] was harassed in such sex-specific and derogatory terms by another [man] as to make it clear that the harasser is motivated by general hostility to the presence of [men] in the workplace," or (3) "offer[s] direct comparative evidence about how the alleged harasser treated members of both sexes in a mixed-sex workplace." *Oncale*, 523 U.S. at 80-81.

However, the fact that one avenue of proof involves an analysis of comparative treatment of men and women does not support the leap that the EEOC likely investigated that matter.[3] To begin with, *Oncale* allows proof of same-sex harassment by two other avenues of proof that do not involve an inquiry into the comparative treatment of men and women. No doubt, this is because in the "kind of environment where same-sex harassment frequently occurs," it may be "difficult, if not impossible," to obtain "proof that men and women were treated differently in the workplace." *Shepherd v. Slater Steels Corp.*, 168 F.3d 998, 1009 (7th Cir. 1999).

Moreover, Mr. Mesta himself did not allege disparate treatment of men and women in his EEOC charge. Mr. Mesta did not include in his EEOC charge any allegations as to the status of female employees; nor did he suggest that the alleged harassment and retaliation was targeted at men, or even at him specifically, because he was a male. To the contrary, the specificity of Mr. Mesta's allegations of the derogatory statements and actions by Mr. Crawford suggests one of the

---

[3]Mr. Mesta argues that "[t]wo out of the three proof schemes articulated in *Shepherd* require an investigation into opposite sex comparators." Pl.'s Resp. Defs.' Mot. Dismiss at 11. In fact, only one – the third – does. The first scheme requires an investigation into the sexual orientation of the alleged harasser and the biological sex of the complaining employee. The second scheme requires an investigation into the "sex-specific and derogatory terms" used by the harasser. *Oncale*, 523 U.S. at 80-81. Neither of those avenues of proof require inquiry into the comparative treatment of the other gender.

two alternate means of alleging a claim of same-sex harassment. We are not willing to assume that the EEOC shouldered the "difficult, if not impossible" burden of looking for comparative evidence to assess Mr. Mesta's same-sex harassment charge when he did not allege that kind of disparate treatment.[4]

For the foregoing reasons, we reject Mr. Mesta's allegation that his sex discrimination claim was within the scope of his EEOC charge and dismiss Count III in its entirety.

## CONCLUSION

For the reasons set forth above, defendants' motion for judgment on the pleadings (doc. # 36) is granted in its entirety.

ENTER:

SIDNEY I. SCHENKIER
United States Magistrate Judge

Dated: July 25, 2011

---

[4]Mr. Mesta makes much out of cases such as *Hamm v. Weyauwega Milk Prods.*, 332 F.3d 1058, 1062 (7th Cir. 2003), holding that a requirement of a successful same-sex sexual harassment claim is that the harassment was "because of . . . sex" (Pl.'s Resp. Defs.' Mot. Dismiss at 7-8, 11). However, *Oncale* and *Shepherd* make clear that those cases cannot be taken to mean that in order to prove same-sex sexual harassment, an employee must *always* prove sex discrimination, in the sense of proving differential treatment of men and women. *Oncale* and *Shepherd* offer two avenues of establishing same-sex harassment that do not require that kind of evidence. Rather, *Hamm's* holding is better read as making the point that the harassment must be a result of the plaintiff's *biological* sex, and not his or her sexual orientation, which is not protected under Title VII. *Hamm*, 332 F.3d at 1062 ("The protections of Title VII have not been extended, however, to permit claims of harassment based on an individual's sexual orientation. Therefore, in same-sex harassment cases, the central question is whether the harassment occurred 'because of the plaintiff's sex.'") (internal quotations and citations omitted); *see also Spearman v. Ford Motor Co., Inc.*, 231 F.3d 1080, 1084-85 (7th Cir. 2000).

12